## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **LA BOTA DEVELOPMENT** | § | **Case No. 10-20376** |
| **COMPANY, INC. and** | § | |
| | § | |
| **LAREDO ROCK TECH SAND &** | § | **Case No.  10-20377** |
| **GRAVEL, LP** | § | |
| | § | **Jointly Administered Under** |
| Debtors. | § | **Case No. 10-20376** |

## FIRST AMENDED JOINT PLAN OF REORGANIZATION PROPOSED BY LA BOTA DEVELOPMENT COMPANY, INC. AND LAREDO ROCK TECH SAND & GRAVEL, LP

The following is the First Amended Plan of Reorganization proposed by La Bota Development Company, Inc. ("***La Bota***") and the First Amended Plan of Reorganization proposed by Laredo Rock Tech Sand & Gravel, LP ("***Rock Tech***") (collectively with La Bota, the "***Debtors***").  Both plans are collectively referred to herein as the "***First Amended Joint Plan***".

## ARTICLE I – DEFINITIONS[1]

Applicable definitions contained in the Bankruptcy Code (the "***Code***") are incorporated into this First Amended Joint Plan, except as modified in this Article I.[2]  As used herein, the following terms shall have the following meanings:

A.    12835 E. Fwy:  Shall mean the A Discount Mini Storage located at 12835 East Fwy, Harris County, Texas.

---

[1]  Any Capitalized Term not expressly defined in the *First Amended Joint Plan* shall have the same meaning as provided in the *Disclosure Statement Under 11 U.S.C.  1125 in support of Joint Plan of Reorganization of La Bota Development Company, Inc. and Laredo Rock Tech Sand & Gravel, LP* ("***Disclosure Statement***").

B.      145 Acre Tract: Shall mean the 145 acre tract.  The 145 Acre Tract is depicted on the attached Exhibit "1" to this First Joint Amended Plan.  Please be advised that the map on the Attached Exhibit "1" is not drawn to scale and is for illustration purposes only.

C.      45 Single Family Lots: Shall mean the 45 Single Family Lots within the single family lots in Starling Creek Subdivision, Laredo, Texas, defined below as the Single Family Lots.  The 45 Single Family Lots are depicted on the attached Exhibit "2" to this First Joint Amended Plan.  Please be advised that the map on the Attached Exhibit "2" is not drawn to scale and is for illustration purposes only.

D.      529 Acre Tract: Shall mean the 529.85 acre future development tract.  The 529 Acre Tract is depicted on the attached Exhibit "1" to this First Joint Amended Plan.  Please be advised that the map on the Attached Exhibit "1" is not drawn to scale and is for illustration purposes only.

E.      5448 Riverview:  Shall mean Riverview Acres trailer park located at 5448 Riverview, Nueces County, Texas.

F.      79 Acre Tract: Shall mean the 79 acre tract out of the 529.85 acre future development.  The Tract is depicted on the attached Exhibit "1" to this First Joint Amended Plan.  Please be advised that the map on the Attached Exhibit "1" is not drawn to scale and is for illustration purposes only.

G.      Administrative Expense:  Shall mean those Allowed Claims entitled to priority under § 507(a)(1)-(5) of the Code.

---

*…continued from the preceding page*

[2]  In there is any conflict between the Disclosure Statement and the First Amended Joint Plan, the First Amended Joint Plan shall control.

H.     <u>Allowed Claim</u>:  Shall mean any Claim, proof of which was filed on or before the date designated by the Court as the last date for filing Proofs of Claim with respect to such Claim, or which has been or hereafter is scheduled by the respective Debtor as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been filed within the applicable periods of limitation fixed by the Bankruptcy Code, Bankruptcy Rules, order of the Court, or this First Amended Joint Plan, or as to which any objection has been withdrawn or has been determined by an order or judgment of the Court allowing such Claim in whole or in part which is a Final Order.

I.     <u>Allowed General Unsecured Claim</u>:  Shall mean an Allowed Claim or any portion thereof, which is not a Secured Claim, in the amount due on the Petition Date.

J.     <u>Allowed Priority Claim</u>: Shall mean an Allowed Claim or any portion thereof which is a claim under § 507(a), other than an Administrative Expense Claim or a Priority Tax Claim.

K.     <u>Allowed Secured Claim</u>:  Shall mean an Allowed Claim or any portion thereof which is secured by any of La Bota's and/or Rock Tech's assets.

L.     <u>Allowed Priority Tax Claim</u>:  Shall mean an Allowed Claim of a kind originating under § 507(a)(8) of the Code.

M.     <u>Allowed Secured Tax Claim</u>:  Shall mean all Allowed Claims or any portion thereof owed to a taxing authority or entity which is secured by any of La Bota's and/or Rock Tech's assets.

N.     <u>BMW</u>: Shall mean Armed Forces Bank f/k/a Bank Midwest, N.A.

O.     <u>Cash</u>:  Shall mean cash, cash equivalent, and other readily marketable instruments.

P.      Chapter 11:  Shall mean Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, *et. seq.*

Q.      Claim:  Shall mean any Claim against La Bota and/or Rock Tech as defined in the Code, which has not been disallowed by a Final Order.

R.      Claims Bar Date:  Shall mean September 15, 2010, the date set by the Local Bankruptcy Rules as the last day to file a Proof of Claim as to either La Bota or Rock Tech.

S.      Code:  Shall mean the United States Bankruptcy Code.

T.      Confirmation Business:  Shall mean the Post-Confirmation operations of La Bota and/or Rock Tech and any transactions, distributions, representations, and court related matters that are required post-confirmation, to comply with the Confirmation Order.

U.      Confirmation Order:  Shall mean the order of the Court determining that each Debtor's plan meets the requirements of Chapter 11 of the United States Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and is entitled to confirmation.

V.      Court:  Shall mean the United States Bankruptcy Court for the Southern District of Texas.

W.      Creditor:  Shall mean an entity that has a claim against either Debtor, specifically including an entity that claims an interest in either of the Debtors' assets, which is further described in §101 (10) of the Code.

X.      Debtor:  May mean either La Bota or Rock Tech depending on the context.

Y.      Debtors:  Shall mean La Bota and Rock Tech.

Z.      Disbursing Agent:  Shall mean the Debtors, serving without fee.

AA.     Disclosure Statement: Shall mean the Debtors Disclosure Statement under 11 U.S.C. § 1125 in Support of Joint Plan of Reorganization of La Bota Development Company,

Inc. and Laredo Rock Tech Sand & Gravel which was filed on August 31, 2010 and the supplement thereto filed on October 29, 2010 and approved by the Court on November 9, 2010.

BB.     Disputed Claim:  Shall mean any Claim which is not an Allowed Claim.

CC.     Distributable Proceeds of La Bota:  Shall mean La Bota's funds generated by post-confirmation operating revenue.

DD.     Distributable Proceeds of Rock Tech:  Shall mean Rock Tech's funds generated by post-confirmation operating revenue.

EE.     Distribution Date:  Shall mean the date or dates upon which payments are made, in whole, or in part, as specified herein.

FF.     DMS: Shall mean A Discount Mini Storage II, Ltd.

GG.     Effective Date:  Shall mean the date which is twenty-one (21) days after the date on which the Confirmation Order becomes final and non-appealable.

HH.     Equity Interest:  Shall mean any rights of the current shareholders of La Bota and/or Rock Tech arising from their status as shareholders or interest holders.

II.     Estate:  Shall mean either La Bota's or Rock Tech's bankruptcy estate.

JJ.     Estates: Shall mean La Bota's and Rock Tech's bankruptcy estates.

KK.     Final Order:  Shall mean a final order or judgment of a court, which is no longer subject to appeal or certiorari proceedings and as to which no appeal or certiorari proceeding is pending.

LL.     FNB: Shall mean First National Bank.

MM.     Impaired Claim:  Shall mean a Claim, the value of which is less than or different from what a claimant would be entitled to receive outside a Chapter 11 proceeding, unless such right has been modified by the Bankruptcy Code.

NN.   <u>Impaired Creditor</u>:  Shall mean a claimant who has an Impaired Claim.

OO.   <u>IVL</u>: Shall mean Integrated Vehicle Leasing.

PP.   <u>La Bota Administrative Claims</u>:  Shall mean the Allowed Administrative Claims of any person or entity entitled to priority under § 507(a)(2) against La Bota.

QQ.   <u>NOL</u>:  Shall mean net operating loss.

RR.   <u>Petition Date</u>:  Shall mean May 3, 2010, the date on which La Bota and Rock Tech filed for relief under Chapter 11.

SS.   <u>Plan</u>: Shall mean either La Bota's Plan of Reorganization or Rock Tech's Plan of Reorganization.

TT.   <u>Priority Claims</u>:  Shall mean an Allowed Claim of any person or entity entitled to priority under § 507(a) other than an Administrative Expense Claim or a Priority Tax Claim.

UU.   <u>Reorganized Debtor</u>:   Shall mean Post-Confirmation La Bota and/or Post-Confirmation Rock Tech.

VV.   <u>Rock Tech Administrative Claims</u>:   Shall mean the Allowed Administrative Claims of any person or entity entitled to priority under § 507(a)(2) against Rock Tech.

WW.   <u>Single Family Lots</u>: Shall mean the single family lots in Starling Creek Subdivision, Laredo, Texas upon which FNB asserts a first lien.  The Single Family Lots are depicted on the <u>attached Exhibit "1" to this First Joint Amended Plan as "Lots".</u>  Please be advised that the map on the Attached Exhibit "1" is not drawn to scale and is for illustration purposes only.

XX.   <u>Tract A</u>:  Shall mean the 3.01 acre tract consisting of a commercial "hard corner" located in Laredo, Webb County, Texas, at the southwest corner of the intersection of Mines Road, a/k/a FM 1472 and International Trade Center Blvd.  The Tract <u>is depicted on the attached</u>

Exhibit "1" to this First Joint Amended Plan.  Please be advised that the map on the Attached Exhibit "1" is not drawn to scale and is for illustration purposes only.

      YY.    Tract B:  Shall mean the 30 acre tract located at 4300 Maquilla, Laredo, Texas. The Tract is depicted on the attached Exhibit "1" to this First Joint Amended Plan.  Please be advised that the map on the Attached Exhibit "1" is not drawn to scale and is for illustration purposes only.

      ZZ.    Tract C:  Shall mean the 7.35 acre tract located at 14300 Mines Rd, Laredo, Texas.  The Tract is depicted on the attached Exhibit "1" to this First Joint Amended Plan. Please be advised that the map on the Attached Exhibit "1" is not drawn to scale and is for illustration purposes only.

      AAA.    Tract D:  Shall mean the 1.0 acre tract of land together with a building formerly occupied by a restaurant and containing 3954 square feet of rentable space. The Tract is depicted on the attached Exhibit "1" to this First Joint Amended Plan.  Please be advised that the map on the Attached Exhibit "1" is not drawn to scale and is for illustration purposes only.

      BBB.    Tract E:  Shall mean the 4.98 acre tract consisting of a commercial "hard corner" located in Laredo, Webb County, Texas, at the northwest corner of the intersection of Mines Road, a/k/a FM 1472 and A. F. Muller Sr. Mem. Blvd.  The Tract is depicted on the attached Exhibit "1" to this First Joint Amended Plan.  Please be advised that the map on the Attached Exhibit "1" is not drawn to scale and is for illustration purposes only.

      CCC.    Tract F:  Shall mean the 17.6 acre tract consisting of a commercial "hard corner" located in Laredo, Webb County, Texas, at the southwest corner of the intersection of Mines Road, a/k/a FM 1472 and A. F. Muller Sr. Mem. Blvd.  The Tract is depicted on the attached

Exhibit "1" to this First Joint Amended Plan.  Please be advised that the map on the Attached Exhibit "1" is not drawn to scale and is for illustration purposes only.

DDD. Tract H:  Shall mean the 9.6 acre tract consisting of a platted high density residential tract, planned to be developed as zero lot line town homes.  The tract is located adjacent to a 4 acre pond/lake with a 6' wide asphalt jogging trail circling the pond/lake.  The Tract is depicted on the attached Exhibit "1" to this First Joint Amended Plan.  Please be advised that the map on the Attached Exhibit "1" is not drawn to scale and is for illustration purposes only.

EEE.  Tract J:  Shall mean the 2.6 acre tract located at Starling Creek, Laredo, Texas. The Tract is depicted and is labeled "J" on Exhibit "7" attached to the Debtors' Joint Disclosure Statement.

FFF.  Tract K:  Shall mean the 8.6 acres at La Bota Pkwy and Muller Memorial, Laredo, Texas.  The Tract is depicted on the attached Exhibit "1" to this First Joint Amended Plan. Please be advised that the map on the Attached Exhibit "1" is not drawn to scale and is for illustration purposes only.

GGG. Tract L:  Shall mean the 61.11 acres (located adjacent and to the south of the developed residential lots a/k/a Starling Creek at La Bota Ranch, Laredo, Texas).  The Tract is depicted on the attached Exhibit "1" to this First Joint Amended Plan.  Please be advised that the map on the Attached Exhibit "1" is not drawn to scale and is for illustration purposes only.

HHH.  Tract SG:  Shall mean the 65.9 acres Laredo Rock Tech Pit, Laredo, Texas.  The Tract is depicted on the attached Exhibit "1" to this First Joint Amended Plan.  Please be advised that the map on the Attached Exhibit "1" is not drawn to scale and is for illustration purposes only.

## ARTICLE II – SUMMARY OF THE FIRST AMENDED JOINT PLAN

The First Amended Joint Plan proffered by La Bota and Rock Tech proposes to satisfy i) all allowed secured claims to the extent of the value of their collateral; ii) all administrative claims to be paid under the terms of the First Amended Joint Plan from the Distributable Proceeds; and iii) all allowed unsecured claims of both La Bota and Rock Tech to be paid in full from the Distributable Proceeds.

Satisfaction of La Bota's Creditors' claims will be derived from the transfer of certain real property and post-confirmation operating revenue.  Payment of Rock Tech's Creditor's allowed claims will be derived from post-confirmation operating revenue and other monies that may be available to satisfy the indebtedness.  For the purpose of the First Amended Joint Plan, La Bota's gross operating proceeds after the deduction of monthly operating and other expenses, shall be referred to as the Distributable Proceeds of La Bota.  Rock Tech's post-confirmation income shall be referred to as the Distributable Proceeds of Rock Tech.

All expenses of administration shall be paid out of the respective Debtor's Distributable Proceeds.  Note that certain expenses are subject to Court approval.  The Court will retain jurisdiction over the estate until substantial consummation has occurred.  All of La Bota's obligations for taxes will be satisfied under Section 1129(a)(9)(c) from the Distributable Proceeds of La Bota.

## ARTICLE III – CLASSIFICATION OF CLAIMS

For the purpose of this First Amended Joint Plan, classes of Claims are designated as follows:

A.    <u>Class 1 – La Bota's Administrative Claims.</u>  Class 1 shall consist of the Allowed Administrative Claims of any person or entity entitled to priority under § 507(a)(2) against La

Bota.  The La Bota Administrative Claims shall include: (i) the claims of professionals retained by La Bota with respect to professional services rendered during the Chapter 11 case, and (ii) claims incurred by La Bota after the Petition Date in, or arising from, the ordinary course of business of the Debtor.

       B.      <u>Class 2 – Rock Tech's Administrative Claims.</u>  Class 2 shall consist of the Allowed Administrative Claims of any person or entity entitled to priority under § 507(a)(2) against Rock Tech.  The Rock Tech Administrative Claims shall include: (i) the claims of professionals retained by Rock Tech with respect to professional services rendered during the Chapter 11 case, and (ii) claims incurred by Rock Tech after the Petition Date in, or arising from, the ordinary course of business of the Debtor.

       C.      <u>Class 3 – La Bota's Priority Tax Claims.</u>  Class 3 shall consist of the Allowed Tax Claims against La Bota of any person or entity entitled thereto under § 507(a)(8) of the Code, but only to the extent the claim has been allowed pursuant to § 502 of the Bankruptcy Code.

       D.      <u>Class 4 – Secured Claim of Bank Midwest, N.A. against La Bota.</u>  Class 4 shall consist of the Allowed Secured Claim of BMW on the Land Loans, but only to the extent the claim has been allowed pursuant to § 502 of the Bankruptcy Code and to the extent of the value of the security as determined in accordance with § 506 of the Bankruptcy Code.

       E.      <u>Class 5 – Secured Claim of Bank Midwest, N.A. against Rock Tech.</u>  Class 5 shall consist of the Allowed Secured Claim of BMW on the Equipment Loans and the Working Capital Loan, but only to the extent the claim has been allowed pursuant to § 502 of the Bankruptcy Code and to the extent of the value of the security as determined in accordance with § 506 of the Bankruptcy Code.

F.    Class 6 – Secured Claim of First National Bank against La Bota.  Class 6 shall consist of the Allowed Secured Claim of FNB on the 1.7M Note, but only to the extent the claim has been allowed pursuant to § 502 of the Bankruptcy Code and to the extent of the value of the security as determined in accordance with § 506 of the Bankruptcy Code.

G.    Class 7 – Secured Claim of A Discount Mini Storage II, Ltd. against La Bota.  Class 7 shall consist of the Allowed Secured Claim of DMS on the 120k Note, but only to the extent the claim has been allowed pursuant to § 502 of the Bankruptcy Code and to the extent of the value of the security as determined in accordance with § 506 of the Bankruptcy Code.

H.    Class 8 – Secured Claim of Integrated Vehicle Leasing against La Bota.  Class 8 shall consist of the Allowed Secured Claim of IVL, but only to the extent the claim has been allowed pursuant to § 502 of the Bankruptcy Code and to the extent of the value of the security as determined in accordance with § 506 of the Bankruptcy Code.

I.    Class 9 – La Bota's Allowed Claims of General Unsecured Creditors.  Class 9 shall consist of any Allowed Claim against La Bota that is not a Class 1 La Bota Administrative Claim, a Class 3 Priority Tax Claim against La Bota, a Class 4 Secured Claim of Bank Midwest, N.A. against La Bota, a Class 6 Secured Claim of First National Bank against La Bota, a Class 7 Secured Claim of A Discount Mini Storage II, Ltd. against La Bota or a Class 8 Secured Claim of Integrated Vehicle Leasing against La Bota.

J.    Class 10 – Rock Tech's Allowed Claims of General Unsecured Creditors.  Class 10, Rock Tech General Unsecured Claims, shall consist of any Allowed Claim against Rock Tech that are not a Class 2 Rock Tech Administrative Claim or a Class 5 Secured Claim of Bank Midwest, N.A. against Rock Tech.

K.     Class 11 – La Bota's Equity Interests.  Class 11 shall consist of the current equity interest holders of La Bota.

L.     Class 12 – Rock Tech's Equity Interests.  Class 12 shall consist of the current equity interest holders of Rock Tech.

### ARTICLE IV – TREATMENT OF CLASSES OF CLAIMS
### WHICH ARE NOT IMPAIRED UNDER THE FIRST AMENDED JOINT PLAN

A.     The following classes are not impaired under the First Amended Joint Plan:

i.      Class 1, La Bota's Administrative Claims;

ii.      Class 2, Rock Tech's Administrative Claims; and

iii.      Class 8, La Bota's Secured Claim of Integrated Vehicle Leasing.

All other creditors and claimants are impaired.

### ARTICLE V – TREATMENT OF UNIMPAIRED CLAIMS

A.     Class 1 – La Bota's Administrative Claims.  La Bota Administrative Claims are to be paid in Cash, in full, up to the amount of the Allowed Claim, on the Effective Date, after the Claim becomes an Allowed Claim, but in no event sooner than the time that the Confirmation Order becomes a Final Order or fourteen (14) days after the date of a Final Order determining the amount of each Claim for Administrative Expense, whichever is later, or on such terms as may be agreed between La Bota and holders of such claims.

B.     Class 2 – Rock Tech's Administrative Claims.  Rock Tech Administrative Claims are to be paid in Cash, in full, up to the amount of the Allowed Claim, on the Effective Date, after the Claim becomes an Allowed Claim, but in no event sooner than the time that the Confirmation Order becomes a Final Order or fourteen (14) days after the date of a Final Order determining the amount of each Claim for Administrative Expense, whichever is later, or on such terms as may be agreed between Rock Tech and holders of such claims.

C.     Class 8 – Secured Claim of Integrated Vehicle Leasing against La Bota.  IVL, the only holder of a Class 8 claim, shall be paid according to the terms between the Debtor and IVL. As of the Petition Date, Class 8 claims totaled $8,085.12.  The Debtor shall resume monthly payments in the amount of $1,347.52, until February 2011 when the agreement will be 100% fulfilled.

Because the holders of Class 1, 2 and 8 Claims are unimpaired, they are not entitled to vote.

## ARTICLE VI – TREATMENT OF CLAIMS IMPAIRED UNDER THE FIRST AMENDED JOINT PLAN

A.     Class 3 – La Bota's Priority Tax Claims.  Class 3 shall consist of the Allowed Tax Claims against La Bota of any person or entity entitled thereto under § 507(a)(8) of the Code. Allowed Claims of taxing authorities will be paid with deferred Cash payments, bearing interest at twelve percent (12%) annual interest, over a period not exceeding fifty-five (55) months after the date of assessment of such claim, of a value, as of the Effective Date, equal to the allowed amount of such claim as permitted by Bankruptcy Code § 1129(a)(9)(c), to commence thirty days after the Effective Date.  Presently $72,078.55 in proof of claims asserting tax claims have been filed against La Bota; however, it appears that this figure includes both 2009 and 2010 taxes.  On its Schedules, La Bota listed its priority tax liability as $28,706.81 for 2009. Taxes will be apportioned between the Debtors and BMW as of the date of the transfers described in the treatment of Class 4. Class 3 is impaired.

B.     Class 4 – Secured Claim of Bank Midwest, N.A. against La Bota.  Class 4 shall consist of the Allowed Secured Claim of BMW on the Land Loans, but only to the extent the claim has been allowed pursuant to § 502 of the Bankruptcy Code and to the extent of the value of the security as determined in accordance with § 506 of the Bankruptcy Code.  The Land Loans

are described in the Schedules filed by La Bota and reflect an amount owing of $10,886,303.00. The Commercial Guaranty is described in the Schedules filed by La Bota in the amount of $502,492.57.   Pursuant to its Schedules, La Bota is indebted to BMW for approximately $10,886,303.00 on the Land Loans.   BMW filed three proof of claims with respect to the Land Loans claiming La Bota's indebtedness is $11,083,750.62.   BMW filed two proof of claims with respect to the Equipment Loans and on the Working Capital Loan claiming Rock Tech's total indebtedness is $1,462,217.14.   Based on BMW's proof of claims, the indebtedness owed by both La Bota and Rock Tech to BMW is $12,545,967.76 in total.   The indebtedness guaranteed by the Commercial Guaranty is addressed in Class 5 below.   La Bota believes that BMW is oversecured based upon the appraised value of the Debtor's assets upon which BMW asserts a lien.

In full and complete satisfaction of all outstanding indebtedness owed to BMW by either Debtor, or any guarantors of such indebtedness, including mutual releases and release of all liens, La Bota will conduct an auction within 30 days after the Effective Date (the "Auction"). The auction will be conducted at the offices of Hughes Watters Askanase, LLP at the address set forth below. At the Auction, BMW will be the stalking horse bidder and will be permitted to credit bid up to its allowed secured claim amount.   However, BMW will not be required to credit bid the full amount of its allowed secured claim.

All of the property listed below will be included in a single lot at the Auction.   The properties will not be auctioned piecemeal, but will remain a single lot.   At the Auction, there will be an initial bid and bid increments.

1.     Tract B;
2.     Tract H;
3.     Tract F;
4.     45 Single Family Lots

5.    79 Acre Tract; and
6.    145 Acre Tract.

All indebtedness owed by La Bota and Rock Tech to BMW shall be fully and finally satisfied, including all liability owed by any guarantors on the Debtors' indebtedness.  BMW shall have no right or ability to pursue claims related to or arising from the satisfied indebtedness against La Bota or Rock Tech.  Further, given the full and complete satisfaction of the indebtedness through the conveyance of the above-listed real property, BMW shall be barred from pursuing any claims related to or arising from either the La Bota or Rock Tech satisfied indebtedness, including but not limited to any related personal guaranties.

Moreover, BMW shall release any and all liens on all real and personal property, including, but not limited to Tract C, Tract SG, a house owned by two of the guarantors (the Debtors dispute that BMW holds a lien on the house), the remainder of the 529 Acre Tract (less the 79 Acre Tract and the 145 Acre Tract), and the remaining Single Family Lots (less the 45 Single Family Lots).

The Auction will result in one of two outcomes.  BMW will be the highest bidder at the Auction, and therefore will be sold all of the above-described property, free and clear of all liens, claims, interest and encumbrances in full satisfaction of all indebtedness owed by the Debtors and the guarantors to BMW, and BMW will release and will no longer hold any liens on any collateral.  Alternatively, BMW will not be the highest bidder and BMW shall receive all of the proceeds from the Auction in full satisfaction of all indebtedness owed by the Debtors and the guarantors to BMW, and BMW will release any liens on any collateral.

Pursuant to the Debtor's appraisals, the total value of the real property to be auctioned is $17,355,708.57.  Pursuant to BMW's appraisals, the total value of the real property to be auctioned in full and complete satisfaction of the La Bota and Rock Tech indebtedness to BMW

is $12,324,311.37.   Between the Debtor's and BMW's appraisals, the average total value of the real property to be auctioned in full and complete satisfaction of the La Bota and Rock Tech indebtedness to BMW is $14,840,009.97.   The indebtedness arising from the Commercial Guaranty is addressed in Class 5 below.  Class 4 is impaired.

Class 5 – Secured Claim of Bank Midwest, N.A. against Rock Tech.  BMW, the only holder of a Class 5 claim, shall be satisfied pursuant to the property transfer described in Class 4 above.

The Commercial Guaranty between BMW and La Bota associated with the Working Capital Loan shall be extinguished when Rock Tech's indebtedness is satisfied pursuant to the above described property transfer, and all liens on any collateral shall be released.  Class 5 is impaired.

D.     Class 6 – Secured Claim of First National Bank against La Bota.  FNB, the only holder of a Class 6 claim, shall be paid with deferred cash payments as detailed below.  As of the Petition Date, Class 6 claims totaled $1,600,000.00.  FNB filed two proof of claims claiming La Bota's indebtedness is $1,629,564.69.  The Allowed Secured Claim of FNB against La Bota shall be converted into a single note with the principal balance of $1,629,564.69 (the "*FNB Note*").  The FNB Note shall be amortized over a thirty (30) year period with an annual interest rate of four percent (4%).  The FNB Note shall be payable in monthly installments of principal and interest with a fifteen (15) year balloon payment.  La Bota shall make monthly principal and interest payments in the amount of $7,500.00 until the debt is entirely extinguished or until the FNB Note matures.  La Bota anticipates that the amount due on the FNB Note at maturity will be approximately $1,054,000.00.

To secure the FNB Note, FNB shall be granted a first lien on Tract C.  Tract C has an appraised valuation of $1,900,000.00 as appraised by La Bota's appraiser and an appraised valuation of $1,750,000.00 as appraised by BMW's appraiser.

Unless specifically allowed or granted in the First Amended Joint Plan, any and all liens held by FNB over any of La Bota's real or personal property, including the Single Family Lots and Tract L, shall be released upon confirmation of this Plan.

E.      Class 7 – Secured Claim of A Discount Mini Storage II, Ltd. against La Bota. DMS, the only holder of a Class 7 claim..  As of the Petition Date, Class 7 claims totaled $118,000.00.  DMS filed a proof of claim claiming La Bota's indebtedness is $118,661.46.  La Bota shall reaffirm the existing indebtedness to DMS.  La Bota shall continue monthly payments to DMS per the terms of the 120k Note.  During the course of the bankruptcy there were nine monthly payments of $1,041.39 each that were not paid to DMS.  These missed payments resulted in $3,320.00 in reasonable attorneys fees for DMS.  Within ten (10) days of the Effective Date, La Bota shall pay $12,692.51 in readily available funds to DMS.

DMS shall retain all of its liens on 12835 E. Fwy.  12835 E. Fwy is currently encumbered by a first lien held by DMS.  12835 E. Fwy, Houston, TX, 77015 consists of approximately 1.28 acres of land together with improvements.  The improvements are generally described as approximately 37,000.00 square feet of net rentable self storage space.  The Harris County tax ad valorem appraised value is $1,246,000.00.  The retail fair market valuation is $1,400,000.00.

F.      Class 9 – La Bota's Allowed Claims of General Unsecured Creditors.  Holders of a Class 9 La Bota's Allowed General Unsecured Claims shall be paid in full by monthly payments over the course of sixty (60) months.  The interest rate shall be zero.  It is anticipated

that if all claims are allowed, the total payment to La Bota's Allowed General Unsecured Claims will be approximately $1,000.00 per month.  Class 9 is impaired.

H.    Class 10 – Rock Tech's Allowed Claims of General Unsecured Creditors. Holders of a Class 10 Rock Tech's Allowed General Unsecured Claims shall be paid monthly payments over the course of sixty (60) months.  The interest rate shall be zero.  It is anticipated that if all claims are allowed, total payment to Rock Tech's Allowed General Unsecured Claims will be less than $1,500.00 per month.  Class 10 is impaired.

I.    Class 11 – La Bota Equity Interest.  The equity interest owners will retain their equity in La Bota, but will not take dividends until all Class 1, 3, 4, 6, 7, 8 and 9 claims are paid in full.

J.    Class 12 – Rock Tech Equity Interest.  The equity interest owners will retain their equity in Rock Tech, but will not take dividends until all Class 2, 5 and 10 claims are paid in full.

## ARTICLE VII – EXECUTORY CONTRACTS

The executory contracts and unexpired leases expressly assumed by La Bota are listed in Exhibit "8" attached to the Disclosure Statement.  The executory contracts and unexpired leases expressly assumed by Rock Tech are listed in Exhibit "9" attached to the Disclosure Statement. All executory contracts and unexpired leases not already assumed or expressly assumed in either the First Amended Joint Plan or the Debtors' Disclosure Statement shall be deemed rejected by La Bota and/or Rock Tech under the First Amended Joint Plan on the Effective Date.

## ARTICLE VIII – IMPLEMENTATION AND EXECUTION
## OF THE FIRST AMENDED JOINT PLAN

A.        <u>Assets of the Reorganized Debtors.</u>

Pursuant to the provisions of Sections 1141(b) and 1141(c) of the Bankruptcy Code, all assets of La Bota will vest in La Bota on the Effective Date, and all assets of Rock Tech will vest in Rock Tech on the Effective Date.  La Bota's assets shall include:

1.        Tract A;
2.        Tract C;
3.        Tract D;
4.        Tract E;
5.        Tract J;
6.        Tract K;
7.        Tract L;
8.        Tract SG;
9.        12835 E. Fwy.;
10.       529 Acre Tract (less the 79 Acre Tract and the 145 Acre Tract);
11.       The Single Family Lots (less the 45 Single Family Lots); and
12.       5448 Riverview (the Riverview Acres Park).

B.        <u>Business Operations and Financial Affairs of La Bota and Rock Tech.</u>

Upon the Effective Date of this First Amended Joint Plan, La Bota and Rock Tech shall be free to conduct their respective Confirmation Business.  Also upon the Effective Date of this First Amended Joint Plan, the Debtors shall be free to manage their respective affairs, and to enter into transactions without restriction or limitation imposed under any provision of the Bankruptcy Code.

C.        <u>Management.</u>

<u>*La Bota.*</u>

La Bota acting as the Disbursing Agent shall operate and conduct its Confirmation Business affairs to the extent necessary to consummate and to make distributions required under its plan, to carry out pending or to institute new litigation, specifically including, but not limited

to, all claims retained by La Bota, to avoid any transfers as permitted under Sections 546, 547, 548, 549 or 550 of the Bankruptcy Code, or to refrain therefrom at its sole discretion, to effectuate the return or recovery of property pursuant to Section 542 of the Bankruptcy Code, to make final reports and accounting as required by the Code and the laws of the State of Texas and to conduct all aspects of La Bota's  Confirmation Business until the assets of La Bota's Estate are sold or conveyed to another entity.

Upon confirmation, La Bota shall be empowered to execute any and all necessary documents to effectuate consummation of its plan.

As of the Effective Date, La Bota shall be responsible for the following duties under its plan: (1) Claims analysis; (2) Claims objections; (3) Claims settlement; (4) avoidance litigation; (5) post confirmation litigation on any contested matters or adversary proceedings; (6) compliance with any post confirmation requirements of the U.S. Trustee or the Bankruptcy Court; (7) appearances on behalf of La Bota on any post confirmation matter brought before the Bankruptcy Court or any other court with appropriate jurisdiction and in that regard, to answer any complaint or accept service of process relating to any legal proceedings implemented against the post confirmation La Bota; (8) filing the final report to the Bankruptcy Court and closing the Estate; and (9) providing such other related services as may be reasonably requested.

The fees and expenses of La Bota's post confirmation professionals will be paid from the revenues generated by La Bota's Confirmation Business operations.  All professionals retained by La Bota shall submit invoices to La Bota on a monthly basis. La Bota will pay such invoices within 30 days of their receipt. Any disputes regarding such fees and expenses that are not amicably resolved by La Bota and the relevant party shall be submitted to the Bankruptcy Court for a final determination.

*Rock Tech.*

Rock Tech acting as the Disbursing Agent shall operate and conduct its Confirmation Business affairs to the extent necessary to consummate and to make distributions required under its plan, to carry out pending or to institute new litigation, specifically including, but not limited to, all claims retained by Rock Tech, to avoid any transfers as permitted under Sections 546, 547, 548, 549 or 550 of the Bankruptcy Code, or to refrain therefrom at its sole discretion, to effectuate the return or recovery of property pursuant to Section 542 of the Bankruptcy Code, to make final reports and accounting as required by the Code and the laws of the State of Texas and to conduct all aspects of Rock Tech's  Confirmation Business until the assets of Rock Tech's Estate are sold or conveyed to another entity.

Upon confirmation, Rock Tech shall be empowered to execute any and all necessary documents to effectuate consummation of its plan.

As of the Effective Date, Rock Tech shall be responsible for the following duties under its plan: (1) Claims analysis; (2) Claims objections; (3) Claims settlement; (4) avoidance litigation; (5) post confirmation litigation on any contested matters or adversary proceedings; (6) compliance with any post confirmation requirements of the U.S. Trustee or the Bankruptcy Court; (7) appearances on behalf of Rock Tech on any post confirmation matter brought before the Bankruptcy Court or any other court with appropriate jurisdiction and in that regard, to answer any complaint or accept service of process relating to any legal proceedings implemented against the post confirmation Rock Tech; (8) filing the final report to the Bankruptcy Court and closing the Estate; and (9) providing such other related services as may be reasonably requested.

The fees and expenses of Rock Tech's post confirmation professionals will be paid from the revenues generated by Rock Tech's Confirmation Business operations.  All professionals

retained by Rock Tech shall submit invoices to Rock Tech on a monthly basis. Rock Tech will pay such invoices within 30 days of their receipt. Any disputes regarding such fees and expenses that are not amicably resolved by Rock Tech and the relevant party shall be submitted to the Bankruptcy Court for a final determination.

D.      Distributions.

Except as otherwise provided in this First Amended Joint Plan, on the Distribution Dates, the respective Disbursing Agent shall distribute the Distributable Proceeds to the holders of Class 1, 2, 3, 5, 6, 7, 8, 9 and 10 Claims.

E.      Objection to Allowance of Claims / Interests.

Only the Debtors may prosecute objections to the allowance of any Claim or interest not specifically allowed under such Debtor's respective  plan.  Upon Confirmation of the First Amended Joint Plan, all Claims and interests set forth within the Schedules of Assets and Liabilities, as liquidated, non-contingent and/or non-disputed, are deemed "Allowed Claims" unless the respective Debtor, within one-hundred and twenty (120) days thereafter, has filed an objection thereto.  The respective Debtor may file objections to any and all Claims or interests, whether or not scheduled as disputed, unliquidated or contingent on the Claims schedule, at any time prior to the expiration of one-hundred and twenty (120) days after the Effective Date.  If, within the time so specified, no objection is filed to the allowance of any Claim or interest duly scheduled or otherwise proved, such Claim or interest shall be deemed allowed in the amount which is proved and the holder of such Claim or interest shall be entitled to obtain distribution thereon.  The expense of prosecuting Claims or interest objections shall be borne by the Estate, except as otherwise awarded by the Court.  The Debtors shall have the right to enter into any

settlement with respect to any Claim for an amount less than $20,000.00 without further approval by the Court.

      F.    <u>Any preference or fraudulent transfer claims held by each Estate shall be retained by the Respective Reorganized Debtor.</u>

All claims for return of preference payments or for fraudulent transfers pursuant to § 544, § 547, § 548, § 549 and/or § 550 of the Code, all claims existing against officers and directors of the Debtors, all claims against third parities on account of an indebtedness, and other claims of the Debtors, to the extent not specifically compromised and released pursuant to the First Amended Joint Plan, are hereby preserved and retained for enforcement by the respective Debtor subsequent to the Effective Date. The payments made during the preference period are detailed on each respective Debtor's Statement of Financial Affairs in response to Question 3. Attached to the Disclosure Statement as Exhibits "3" and "6" are true and correct copies of the Debtors' responses to Question 3. No claim of the Debtors shall be waived, compromised, settled, relieved or relinquished solely as a result of plan confirmation.

All claims held by each respective Estate shall be prosecuted by the respective Debtor or the respective Reorganized Debtor. All decisions with respect to the prosecution and/or settlement of such claims shall be made by the respective Reorganized Debtor. All costs associated with prosecuting such claims shall be paid by the respective Reorganized Debtor.

      G.    <u>Non-Consensual Confirmation.</u>

With respect to any class of Claims that does not vote to accept this First Amended Joint Plan, the Debtors will seek to confirm the First Amended Joint Plan through application of the "cramdown" provisions of Section 1129(b) of the Bankruptcy Code.

H.    Conditions Precedent.

Confirmation of this First Amended Joint Plan is conditioned upon a Confirmation Order that has been entered by the Bankruptcy Court.

I.    Each Debtor's plan is independent.

While in the interest of convenience for all creditors and parties-in-interest, La Bota and Rock Tech confirmed a First Amended Joint Plan, because each Debtor's bankruptcy is jointly-administered confirmation of each Debtor's Plan was independent of the confirmation of the others Debtor's Plan.  Thus, a default under one Debtor's Plan, shall not cause a default under the other Debtor's Plan.

J.    Conditional Effective Date.

The Effective Date is conditioned upon the Confirmation Order becoming a Final Order.

K.    Closing the Case.

Upon substantial consummation of La Bota's Plan and the resolution of proceedings related to any unresolved or disputed Claims, La Bota shall file its final report, and request that its Estate be closed.  Upon substantial consummation of Rock Tech's Plan and the resolution of proceedings related to any unresolved or disputed Claims, Rock Tech shall file its final report, and request that its Estate be closed

**ARTICLE IX – ADMINISTRATION OF THE ESTATE**

A.    Administration of the Estate.  On the Effective Date, La Bota, as the Reorganized Debtor, will become the owner of all the property, claims or interests and assets of La Bota of every kind subject only to its obligations under this First Amended Joint Plan and valid liens.  La Bota, acting as the Disbursing Agent, will make distributions to all its creditors and interest owners, except as noted in this First Amended Joint Plan. On the Effective Date, Rock Tech, as

the Reorganized Debtor, will become the owner of all of its property, claims or interests of every kind subject only to its obligations under this First Amended Joint Plan and valid liens.  Rock Tech, acting as the Disbursing Agent, will make distributions to all its creditors and interest owners, except as noted in this First Amended Joint Plan.

B.      <u>Retention of Professionals</u>.  Following the Effective Date, the Debtors may retain professional persons including attorneys, accountants, and financial advisors on such terms as each may approve in the respective Debtor's sole discretion for the purpose of representing such Debtor in the administration of the Estate.  Upon the confirmation of this First Amended Joint Plan, the Debtors will be relieved of any obligation of filing monthly operating reports or monthly financial reports with the Court or of seeking approval of payments for professional services rendered following the Effective Date.

C.      <u>Expenses of Administration</u>.  Any statutory fees payable by the Debtors or their Estates under 28 U.S.C. § 1930 shall be paid for from the respective Debtor's Distributable Proceeds.

D.      <u>Administrative Closing</u>.  Upon substantial consummation of this First Amended Joint Plan, the Debtors shall take all actions necessary to close this Jointly Administered Chapter 11 case.

E.      <u>Disposition of Litigation</u>.  All litigation against each Debtor and/or such Debtor's Estate which had commenced prior to the date of the voluntary petition, and which are pending before a court other than the United States Bankruptcy Court, Southern District of Texas, Houston Division are discharged through plan confirmation, and shall be dismissed with prejudice unless otherwise provided for herein, or by order of the Court, within thirty (30) days

after the Effective Date.  All litigation pending before the Bankruptcy Court, if any, will continue and will not be resolved directly or indirectly through plan confirmation.

      F.    <u>Effectuating Documents and Necessary Authorizations.</u>  The Debtors will have authority to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this First Amended Joint Plan.

The Debtors, if and to the extent necessary, will seek such orders, judgments, injunctions, regulatory approvals, and rulings that may be required to carry out and further the intentions and purposes, and give full effect to the provisions, of this First Amended Joint Plan.

      G.    <u>Provisions Governing Distributions.</u>

      1.    <u>Distribution Responsibility.</u>

The Debtors will be responsible for all distributions under the terms of the First Amended Joint Plan to their respective creditors and interest holder.

      2.    <u>Delivery of Distributions.</u>

Subject to Rule 9010 of the Federal Rules of Bankruptcy Procedure, distributions to holders of Allowed Claims will be made at the address of each such holder as set forth on the proofs of claim filed by such holders, or at the last known address of such holder if no proof of claim is filed or if the respective Debtor has been notified in writing of a change of address.

      3.    <u>Unclaimed Distributions and Uncashed Checks.</u>

All claims for undeliverable distributions must be made on or before the later of the first anniversary of the Effective Date of this First Amended Joint Plan, or the ninetieth (90th) day following date on which such Claim is Allowed.  After such date, all unclaimed distributions will revert to the respective Debtor, and the Claim of any holder with respect to such distribution will

be discharged and forever barred.  Checks issued in respect of Allowed Claims will be null and void if not negotiated within six (6) months after the date of issuance thereof.  In no event shall any funds escheat to the State of Texas.

H.    Preservation of Claims.  All claims or causes of action owned by either Debtor or their respective Estate are expressly preserved, and are unaffected by plan confirmation.

## ARTICLE X – TAXATION

A.    Introduction:  This section is also contained in the Disclosure Statement and discusses the treatment of certain tax attributes and consequences of and to the Estates, their creditors, La Bota, Rock Tech and the Reorganized Debtors. This summarizes certain of the important federal income tax consequences of the transactions described herein. This discussion is for informational purposes only and does not constitute tax advice.

**THE FOLLOWING DISCUSSION IS A SUMMARY OF CERTAIN SIGNIFICANT FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN TO THE DEBTORS AND TO HOLDERS OF CLAIMS AND EQUITY INTERESTS AND IS BASED ON THE INTERNAL REVENUE CODE OF 1986 (TITLE 26, UNITED STATES CODE), AS AMENDED TO THE DATE HEREOF (THE "TAX CODE"), TREASURY REGULATIONS PROMULGATED AND PROPOSED THEREUNDER, JUDICIAL DECISIONS AND PUBLISHED ADMINISTRATIVE RULES AND PRONOUNCEMENTS OF THE IRS AS IN EFFECT ON THE DATE HEREOF. CHANGES IN SUCH RULES OR NEW INTERPRETATIONS THEREOF COULD SIGNIFICANTLY AFFECT THE TAX CONSEQUENCES DESCRIBED BELOW. NO RULINGS HAVE BEEN REQUESTED FROM THE IRS.  MOREOVER, NO LEGAL OPINIONS HAVE BEEN REQUESTED FROM COUNSEL WITH RESPECT TO ANY OF THE TAX ASPECTS OF THE PLAN.**

**THE FEDERAL, STATE, LOCAL AND OTHER TAX CONSEQUENCES OF THE PLAN TO THE HOLDERS OF CLAIMS AND EQUITY INTERESTS MAY VARY BASED UPON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER.  IN ADDITION, THIS DISCUSSION DOES NOT COVER ALL ASPECTS OF FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO THE DEBTORS OR THE HOLDERS OF ALLOWED CLAIMS OR EQUITY INTERESTS (SUCH AS HOLDERS WHO DO NOT ACQUIRE THEIR CLAIM ON ORIGINAL ISSUE), NOR DOES THE DISCUSSION DEAL WITH TAX ISSUES PECULIAR TO CERTAIN TYPES OF TAX PAYERS (SUCH AS DEALERS IN SECURITIES, S CORPORATIONS, LIFE INSURANCE COMPANIES, FINANCIAL INSTITUTIONS, TAX-EXEMPT**

ORGANIZATIONS AND FOREIGN TAXPAYERS).   NO ASPECT OF FOREIGN, STATE, LOCAL OR ESTATE AND GIFT TAXATION IS ADDRESSED.

THE FOLLOWING SUMMARY IS, THEREFORE, NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER OF A CLAIM OR EQUITY INTEREST. HOLDERS OF CLAIMS OR EQUITY INTERESTS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS FOR THE FEDERAL, STATE, LOCAL AND OTHER TAX CONSEQUENCES PECULIAR TO THEM UNDER THE PLAN.   THE DEBTORS ASSUME NO RESPONSIBILITY FOR THE TAX EFFECT THAT CONFIRMATION AND RECEIPT OF ANY DISTRIBUTION UNDER THE PLAN MAY HAVE ON ANY GIVEN CREDITOR OR OTHER PARTY IN INTEREST.

No administrative rulings will be sought from the Internal Revenue Service (hereinafter **"IRS"**) with respect to any of the federal income tax aspects of the Plan.  Consequently, there can be no assurance that the treatment described in this Disclosure Statement will be accepted by the IRS.  No opinion of counsel has either been sought or obtained with respect to the federal income tax aspects of the Plan.

B.      IRS Circular 230 Disclosure.

THIS FIRST AMENDED JOINT PLAN IS WRITTEN TO SUPPORT THE PROMOTION OR THE MARKETING OF TRANSACTIONS DISCUSSED HEREIN. TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE IRS, THE DEBTORS ARE INFORMING YOU THAT THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY TAXPAYER FOR THE PURPOSE OF AVOIDING TAX-RELATED PENALTIES THAT MAY BE IMPOSED ON SUCH TAXPAYER UNDER THE TAX CODE.  TAXPAYERS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

C.      Consequences to Holders of Claims.

1.      Realization and Recognition of Gain or Loss in General

The federal income tax consequences of the implementation of the Plan to a Holder of a Claim will depend, among other things, upon the origin of the Holder's Claim, when the Holder's Claim becomes an Allowed Claim, when the Holder received payment in respect of such Claim, whether the Holder reports income using the accrual or cash method of accounting,

whether the Holder has taken a bad debt deduction or worthless security deduction with respect to such claim, whether the Claimant receives consideration in more than one tax year of the Claimant, whether the Claimant is a resident of the United States, whether all the consideration received by the Claimant is deemed to be received by that Claimant in an integrated transaction and whether the Holder's Claim constitutes a "security" for federal income tax purposes.

Generally, a Holder of an Allowed Claim will realize gain or loss on the exchange under the Plan of its Allowed Claim for stock and other property (such as Cash and new debt instruments), in an amount equal to the difference between (i) the sum of the amount of any Cash and the issue price of any debt instrument (other than any consideration attributable to a Claim for accrued but unpaid interest), and (ii) the adjusted basis of the Allowed Claim exchanged therefore (other than basis attributable to accrued but unpaid interest previously included in the Holder's taxable income). The treatment of accrued but unpaid interest and amounts allocable thereto varies depending on the nature of the Holder's claim, such as (i) the nature and origin of the Claim; (ii) the tax status of the holder of the Claim; (iii) whether the holder is a financial institution; (iv) whether the Claim is a capital asset in the hands of the holder; (v) whether the Claim has been held for more than one (1) year; (vi) the extent to which the holder previously claimed a loss, bad debt deduction or charge to a reserve for bad debts with respect to the Claim, and is discussed below.

Whether or not such realized gain or loss will be recognized (*i.e.*, taken into account) for federal income tax purposes will depend in part upon whether such exchange qualifies as a recapitalization or other 'reorganization" as defined in the Tax Code, which may in turn depend upon whether the Claim exchanged is classified as a "security" for federal income tax purposes. The term "security" is not defined in the Tax Code or in the Treasury Regulations. One of the

most significant factors considered in determining whether a particular debt instrument is a security is the original term thereof.  In general, the longer the term of an instrument, the greater the likelihood that it will be considered a security.  As a general rule, a debt instrument having an original term of 10 years or more will be classified as a security, and a debt instrument having an original term of fewer than five years will not.  Debt instruments having a term of at least five years but less than 10 years are likely to be treated as securities, but may not be, depending upon their resemblance to ordinary promissory notes, whether they are publicly traded, whether the instruments are secured, the financial condition of the debtor at the time the debt instruments are issued, and other factors.  Each Holder of an Allowed Claim should consult his or her own tax advisor to determine whether his or her Allowed Claim constitutes a security for federal income tax purposes.

       2.    <u>Accrued Interest</u>

The Debtors intend to take the position that all payments in respect of Allowed Claims will be first allocated to the principal amount of the Allowed Claim, with any excess allocated to accrued unpaid interest.  However, there is no assurance that such allocation would be respected by the IRS for federal income tax purposes.  In general, to the extent any amount received by a Holder of an Allowed Claim is received in satisfaction of accrued interest during its holding period, such amount will be taxable to the Holder as interest income (if not previously included in the Holder's gross income).  Conversely, a Holder generally will recognize a deductible loss to the extent any accrued interest claimed was previously included in gross income and is not paid in full.  Each Holder of an Allowed Claim is urged to consult its tax advisor regarding the allocation of consideration and deductibility of unpaid interest for tax purposes.

A Holder, who, under its accounting method, was not previously required to include in income, accrued but unpaid interest attributable to its existing Claims, and who exchanges its interest Claim for cash, or other property, pursuant to the Plan will be treated as receiving ordinary interest income to the extent of any consideration so received allocable to such interest, regardless of whether that Holder realizes an overall gain or loss as a result of the exchange of its existing Claims.

    3.  <u>Withholding</u>

All distributions to Holders of claims under the Plan are subject to any applicable withholding.  Under federal income tax law, interests, dividends, and other reportable payments may, under certain circumstances, be subject to "backup withholding" at a 28% rate.  Backup withholding generally applies if the Holder (a) fails to furnish its social security number or other taxpayer identification number ("***TIN***"), (b) furnishes an incorrect TIN, (c) fails properly to report interest or dividends, or (d) under certain circumstances, fails to provide a certified statement, signed under penalty of perjury, that the TIN provided is its correct number and that it is not subject to backup withholding.  Backup withholding is not an additional tax but merely an advance payment, which may be refunded to the extent it results in an overpayment of tax.  Certain persons are exempt from backup withholding, including, in certain circumstances, corporations and financial institutions.

    4.  <u>Consequences to Debtors or Reorganized Debtors - Discharge of Indebtedness Income Generally</u>

In general, the discharge of a debt obligation by a debtor for an amount less than the adjusted issue price (generally, the amount received upon incurring the obligation plus the amount of any previously amortized original issue discount and less the amount of any previously amortized bond issue premium) gives rise to cancellation of indebtedness ("***COD***")

income which must be included in a debtor's income for federal income tax purposes, unless, in accordance with section 108(e)(2) of the Tax Code, payment of the liability would have given rise to a deduction.  A corporate debtor that issues its own stock or its own debt in satisfaction of its debt is treated as realizing COD income to the extent the fair market value of the stock or the issue price of new debt issued is less than the adjusted issue price of the old debt.  COD income is not recognized by a taxpayer that is a debtor in a title 11 (bankruptcy) case if a discharge is granted by the Bankruptcy Court or pursuant to a plan approved by the Bankruptcy Court (the "***Bankruptcy Exclusion Rules***").

The Debtors have not determined if any COD income will be realized pursuant to the Plan, but believes that the COD income, if any, will not be recognized by the Debtors due to the Bankruptcy Exclusion rules.  However, the Debtors, as a result of the exception, may be subject to a reduction of certain of its "tax attributes" to the extent that COD income is not recognized under the Bankruptcy Exclusion Rules.  Thus, while the Debtors will not recognize taxable income from discharge of indebtedness, they may experience reductions in (i) any net operating losses ("***NOL***") that have accumulated, (ii) the tax basis of its property, and (iii) other tax attributes, as set forth in section 108(b)(2) of the Tax Code.

Nothing herein shall be construed as advice to Reorganized La Bota or Reorganized Rock Tech; the Reorganized Debtors are relying solely on their own counsel for such advice.

### ARTICLE XI – DISCHARGE OF DEBTOR, INJUNCTION AND RELEASES

A.    <u>Discharge</u>.  Except as otherwise provided in this First Amended Joint Plan or in the Confirmation Order, Confirmation shall operate as a discharge pursuant to Section 1141(d)(1) of the Code.  The discharge is effective as of the Effective Date, of any and all debts or Claims against either Debtor that arose anytime before Confirmation, including but not limited

to all debts or Claims that accrued before, on or after the Petition Date.  As to every discharged debt and Claim, the Creditor that held such debt or Claim shall be precluded from asserting against either Debtor, or such Debtor's respective Estate, any further Claim based upon any document, instrument or act, omission, transaction or any other activity of any kind or nature that occurred prior to the Confirmation Date, including without limitation, Claims in the nature of successor liability.  Without limiting the generality of the foregoing, on the Effective Date the Debtors shall be discharged from any debt that arose before Confirmation and any debt of the kind specified in Sections 502(g), 502(h), 502(i) of the Code to the full extent permitted by Section 1141(d)(1)(A) of the Code.

        B.    <u>Injunction</u>. The Confirmation Order shall operate as a temporary injunction against the commencement or continuation of any act relating to the collection or enforcement of any Claim or rights governed by the discharge provisions hereof ("***Discharged Claim***") against La Bota absent a default in respect to the treatment of the Claims of the Creditor under La Bota's plan.  A default under La Bota's Plan shall not cause a default under Rock Tech's plan.  The Confirmation Order shall provide, among other things that except as otherwise provided in this First Amended Joint Plan, all Creditors who have held, hold or may hold Claims against La Bota are enjoined from and after the Effective Date unless there has been a default under La Bota's plan, from: (i) commencing or continuing in any manner any action or proceeding of any kind with respect to such Discharged Claim against La Bota; (ii) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree of order against La Bota, the estate with respect to such Discharged Claim; (iii) creating, perfecting or enforcing any encumbrance of any kind against La Bota, or its estate, with respect to any such Claim or interest; and (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any

obligation due La Bota, its estate, and/or the Reorganized La Bota with respect to any such Discharged Claim.

The Confirmation Order shall operate as a temporary injunction against the commencement or continuation of any act relating to the collection or enforcement of any Claim or rights governed by the discharge provisions hereof ("**_Discharged Claim_**") against Rock Tech absent a default in respect to the treatment of the Claims of the Creditor under Rock Tech's plan. A default under Rock Tech's Plan shall not cause a default under La Bota's plan. The Confirmation Order shall provide, among other things that except as otherwise provided in this First Amended Joint Plan, all Creditors who have held, hold or may hold Claims against Rock Tech are enjoined from and after the Effective Date unless there has been a default under Rock Tech's plan, from: (i) commencing or continuing in any manner any action or proceeding of any kind with respect to such Discharged Claim against Rock Tech; (ii) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree of order against Rock Tech, its estate with respect to such Discharged Claim; (iii) creating, perfecting or enforcing any encumbrance of any kind against Rock Tech, or its estate, with respect to any such Claim or interest; and (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due Rock Tech, its estate, and/or the Reorganized Debtor with respect to any such Discharged Claim.

      a. <u>Releases</u>. The Debtors, and any officers, partners, directors, employees, any other agents, contractors, employees, financial advisors, attorneys and accountants or any property of the foregoing persons/entities or any direct or indirect transferee of any property, or direct or indirect successor in interest to any of the foregoing persons,

or any property of any such transferee or successor shall have no liability to any Creditor with a Claim or interest for any act or omission in connection with or arising out of the administration of this First Amended Joint Plan or the property to be distributed under this First Amended Joint Plan, except for willful misconduct or gross negligence.

D.   <u>Protection of Certain Parties in Interest.</u>   If the respective current officers, directors, shareholders, members, representatives, attorneys, financial advisors, and agents of the Debtors, act in good faith, the First Amended Joint Plan provides they will not be liable to any holder of a Claim or Equity Interest, or other party with respect to any action, forbearance from action, decision, or exercise of discretion taken from the Petition Date to the Effective Date in connection with (i) the operation of La Bota; (ii) the operation of Rock Tech; (iii) the proposal or implementation of any of the transactions provided for, or contemplated in, the First Amended Joint Plan and the documents and exhibits that aid in effectuating the First Amended Joint Plan, ("***Plan Documents***"); or (iv) the administration of the First Amended Joint Plan or the assets and property to be distributed pursuant to the Plan Documents; other than for willful misconduct or gross negligence.  The Debtors, the Reorganized Debtors, and their respective affiliates, officers, directors, shareholders, members, representatives, attorneys, financial advisors, and agents may rely upon the opinions of counsel, certified public accountants, and other experts or professionals employed by the Debtors, and the Reorganized Debtors, and such reliance will conclusively establish good faith.  In any action, suit or proceeding by any holder of a Claim or Equity Interest or other party in interest contesting any action by, or non-action of, the Debtors, the Reorganized Debtors or their respective affiliates, officers, directors, shareholders, members, representatives,

attorneys, financial advisors, and agents as not being in good faith, the reasonable attorney's fees and costs of the prevailing party will be paid by the losing party and as a condition to going forward with such action, suit, or proceeding at the outset thereof, all parties thereto will be required to provide appropriate proof and assurances of their capacity to make such payments or reasonable attorney's fees and costs in the event they fail to prevail.

E.     <u>Effectuating Documents and Necessary Authorizations.</u>  The Plan Documents will be executed and, if appropriate, filed with the appropriate governmental authorities on or before the Effective Date, and they will become effective on the Effective Date.

The Debtors will have authority to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of each Debtor's plan.

The Debtors, to the extent necessary, will seek such orders, judgments, injunctions, regulatory approvals, and rulings that may be required to carry out and further the intentions and purposes, and give full effect to the provisions, of each Debtor's plan.

F.     <u>Regulatory Approvals.</u>   As this First Amended Joint Plan is not intended to modify or supplement any regulatory authority over the Debtors, all regulatory approvals required to be obtained in connection with this First Amended Joint Plan will be sought and obtained.

G.     <u>Objection Procedures and Treatment of Disputed Claims.</u>

1.     <u>Objection Deadline and Process</u>

The Debtors shall have the exclusive authority to object to the allowance of any Claim, which shall be exercised at the sole discretion of each respective Debtor.   All objections to

Claims must be filed within one hundred twenty (120) days following the Effective Date of this First Amended Joint Plan, unless extended by the Bankruptcy Court.

Each Debtor may file objections to any and all Claims or interests against such Debtor or such Debtor's Estate, whether or not scheduled as disputed, un-liquidated or contingent on the Claims schedule, at any time prior to the expiration of one hundred and twenty (120) days after the Effective Date.  If, within the time so specified, no objection is filed to the allowance of any Claim or interest duly scheduled or otherwise proved, such Claim or interest shall be deemed allowed in the amount which is proved and the holder of such Claim or interest shall be entitled to obtain distribution thereon.  The expense of prosecuting Claims or interest objections shall be borne by the Estate, except as otherwise awarded by the Court. The Debtors shall have the right to enter into any settlement with respect to any Claim for an amount less than $20,000.00 without further approval by the Court.

Notice of any proceedings with respect to a Claim Objection, including a settlement or withdrawal, will be sufficient if served by the respective Debtor on the holder of the Claim to which such Objection has been made.  Rule 9019 of the Bankruptcy Rules will not apply to the settlement or withdrawal of any Claim Objection.

2.  <u>Bar Date to File an Administrative Claim or a Claim for Rejection Damages.</u>

The bar date to file an Administrative Expense claim against either of the Debtors is thirty days after the Effective Date of the First Amended Joint Plan.  The bar date to file a claim for any damages resulting from a rejection of an executory contract that is rejected through the First Amended Joint Plan, is thirty (30) days after the Effective Date of the First Amended Joint Plan.

      3.      <u>Distributions to Holders of Disputed Claims.</u>

At such time as a Disputed Claim becomes an Allowed Claim, the respective Debtor shall pay that claim within thirty (30) days of such determination.  However, if the class to which the former Disputed Claim belongs to has not received a distribution, or has only received a partial distribution under the First Amended Joint Plan, such claim will be paid at the same time the class receives its future distributions, and such claim will receive any previously made distributions within thirty (30) days of the date that the Disputed Claim becomes an Allowed Claim.

      H.      <u>Provisions Governing Distributions.</u>

      1.      <u>Distribution Responsibility.</u>

La Bota will be responsible for all distributions under the terms of its plan.  Rock Tech will be responsible for all distributions under the terms of its plan.

      2.      <u>Delivery of Distributions.</u>

Subject to Rule 9010 of the Federal Rules of Bankruptcy Procedure, distributions to holders of Allowed Claims will be made at the address of each such holder as set forth on the Proof of Claims filed by such holders, or at the last known address of such holder if no Proof of Claim is filed or if, the respective Debtor has been notified in writing of a change of address.

      3.      <u>Unclaimed Distributions and Uncashed Checks.</u>

All Claims for undeliverable distributions must be made on or before the later of the first anniversary of the Effective Date of the First Amended Joint Plan, or the ninetieth (90th) day following date on which such Claim is Allowed.  After such date, all unclaimed distributions will revert to the respective Debtor, and the Claim of any holder with respect to such distribution will be discharged and forever barred.  Checks issued in respect of Allowed Claims will be null and

void if not negotiated within six (6) months after the date of issuance thereof.  In no event shall any funds escheat to the State of Texas.

## ARTICLE XII – RETENTION OF JURISDICTION

After the Effective Date of the First Amended Joint Plan, the Bankruptcy Court will continue to have jurisdiction over all matters arising under, arising out of or relating to these cases.  Such jurisdiction will be exercised to (a) insure that the purpose and intent of the First Amended Joint Plan are carried out; (b) consider any modification of the First Amended Joint Plan under Section 1127 of the Bankruptcy Code before substantial consummation as defined in Section 1101(2) of the Bankruptcy Code; (c) hear and determine all Claims, controversies, suits, and disputes against the Debtors; (d) hear and determine all Objections to Claims, controversies, suits and disputes that may be pending at or initiated after the Effective Date; (e) classify the Claims of any creditor and to re-examine Claims which have been allowed for purposes of voting, and to determine Objections which may be filed to Claims; (f) hear, adjudicate, determine, and enforce claims and causes of action which may exist on behalf of either Debtor or their estate; (g) consider and act on the compromise and settlement of any Claim against or cause of action on behalf of the Debtors or their estate; (h) hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation, execution, or enforcement of the First Amended Joint Plan; (i) hear and determine all requests for compensation and/or reimbursement of expenses for services rendered or expenses incurred prior to the Effective Date which may be made after the Effective Date of the First Amended Joint Plan; (j) enforce and interpret by injunction or otherwise the terms and conditions of the First Amended Joint Plan; (k) adjudicate any and all disputes regarding ownership and other rights regarding La Bota's, Rock Tech's and/or the Reorganized Debtors' assets; (l) enter an order closing the Jointly

Administered Chapter 11 Cases; (m) correct any defect, cure any omission, or reconcile any inconsistency in the First Amended Joint Plan or Confirmation Order which may be necessary or helpful to carry out the purposes and intent of the First Amended Joint Plan; (n) consider any and all actions taken to enforce the terms of or to collect on any of the indebtedness described herein on either the Debtors or any other related party; and (o) consider and act on such other matters consistent with the First Amended Joint Plan as may be provided in the Confirmation Order.

## ARTICLE XIII – COMPLIANCE WITH LAW

The First Amended Joint Plan mandates compliance by La Bota, Rock Tech, and any other person charged with carrying out any provisions of the First Amended Joint Plan with all withholding and reporting requirements imposed by federal, state and local taxing authorities, and all distributions under the First Amended Joint Plan will be subject to such withholding and reporting requirements.  In addition, the First Amended Joint Plan requires that La Bota and/or Rock Tech, if notified by any governmental authority that it is in violation of any applicable law, rule, regulation, or order of such governmental authority relating to its business, comply with such law, rule, regulation or order, unless the legality or applicability of such requirement is being contested in good faith in an appropriate proceeding and, if appropriate, an adequate reserve has been set aside.  Finally, all fees payable pursuant to Section 1930 of Title 28 of the United States Code, will be paid on or before the Effective Date**.**

## ARTICLE XIV – AMENDMENT OR MODIFICATION

The Debtors may modify this First Amended Joint Plan at any time before confirmation, provided that the requirements of Sections 1122, 1123 and 1125 are satisfied with respect to the modification.  After confirmation and before substantial consummation of this First Amended Joint Plan, modifications to this First Amended Joint Plan may be made pursuant only to the

extent permitted by Sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, may confirm this First Amended Joint Plan under Section 1129 of the Bankruptcy Code, as modified.

If La Bota's plan is withdrawn or revoked by La Bota, or if confirmation of La Bota's plan does not occur, then such plan will be deemed null and void.  If Rock Tech's plan is withdrawn or revoked by Rock Tech, or if confirmation of Rock Tech's plan does not occur, then such plan will be deemed null and void.

## ARTICLE XV – NOTICES

All notices or demands required or permitted hereunder shall be deemed to have been duly given and served when made in writing and deposited in the United States Mail, First Class, in an envelope addressed to the last known address of the noticed party, with postage prepaid.

Signed this 9th day of June, 2011.

Respectfully submitted,

**LA BOTA DEVELOPMENT COMPANY, INC.**

By: */s/ Albert F. Muller III*
         Albert F. Muller III, President

**LAREDO ROCK TECH SAND & GRAVEL, LP**

By: */s/ Albert F. Muller III*
         Albert F. Muller III, Sole Managing
         Member of Mariposa Group, LLC, a Texas
         Limited Liability Company, being the Sole
         General Partner of Laredo Rock Tech Sand
         & Gravel, LP.

**APPROVED:**

*/s/ Wayne Kitchens*_____
Wayne Kitchens        TBN 11541110
wkitchens@hwa.com
Steven Shurn          TBN 24013507
sshurn@hwa.com
Simon Mayer           TBN 24060243
smayer@hwa.com
**HughesWattersAskanase, LLP**
333 Clay Street, 29th Floor
Houston, Texas 77002
Tel: 713.759.0818
Fax: 713.759.6834
**COUNSEL FOR DEBTORS**